UNITED STATES OF AMERICA
UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF MICHIGAN
NORTHERN DIVISION

___

BRIAN KEITH COURTNEY,

        Plaintiff,               Case No. 2:15-cv-78

v.                                    Honorable Gordon J. Quist

MICHIGAN DEPARTMENT
OF CORRECTIONS, et al.,

        Defendants.

_____/

## OPINION

        This is a civil rights action brought by a state prisoner pursuant to 42 U.S.C. § 1983. Plaintiff has paid the entire filing fee to proceed in this action. Under the Prison Litigation Reform Act, PUB. L. NO. 104-134, 110 STAT. 1321 (1996), the Court is required to dismiss any prisoner action brought under federal law if the complaint is frivolous, malicious, fails to state a claim upon which relief can be granted, or seeks monetary relief from a defendant immune from such relief. 28 U.S.C. § 1915A and 42 U.S.C. § 1997e(c). The Court must read Plaintiff's *pro se* complaint indulgently, *see Haines v. Kerner*, 404 U.S. 519, 520 (1972), and accept Plaintiff's allegations as true, unless they are clearly irrational or wholly incredible. *Denton v. Hernandez*, 504 U.S. 25, 33 (1992). Applying these standards, the Court will dismiss Plaintiff's complaint for failure to state a claim against Defendants Michigan Department of Corrections (MDOC), Heyns, Maclaren, Aramark Food Service, Callintine, and Mastaw. The Court will serve the complaint against Defendants Sabisch, Bekett, Johnson, Dotson, and Hill.

**Discussion**

I.       Factual allegations

Plaintiff Brian Keith Courtney, a state prisoner currently confined at the Kinross Correctional Facility (KCF), filed this *pro se* civil rights action pursuant to 42 U.S.C. § 1983. In Plaintiff's amended complaint (docket #7-1), he names Defendants Michigan Department of Corrections (MDOC), MDOC Director Daniel Heyns, Warden Duncan Maclaren, Aramark Food Service, food service workers Bekett, Callintine, and Sabisch, Sergeant Johnson, Corrections Officer Dotson,[1] Assistant Resident Unit Supervisor Kevin Hill, and Administrative Assistant David Mastaw.

In Plaintiff's amended complaint, he alleges that during the pertinent time period, Plaintiff was an elected representative on the Warden's Forum at KCF. In April of 2015, Plaintiff reported inappropriate conduct between Inmate Hurst and Defendant Sabisch. Plaintiff also alleges that he spoke to Inmate Hurst about his relationship with Defendant Sabisch on May 21, 2015. Inmate Hurst became quite defensive. Plaintiff's complaints launched an internal investigation by the MDOC.

During the same time period, Plaintiff received threats from Defendant Johnson regarding complaints Plaintiff had written on Defendants Callintine and Aramark staff. Plaintiff filed a complaint and confronted Defendant Johnson in front of his supervisor regarding Defendant Johnson's threats. On May 18, 2015, the Warden's Forum asked Defendant Maclaren the following:

> [T]here has been [an ongoing] issue with Aramark Supervisor Callintine. This has been brought to the Warden's attention previously and nothing has changed. Ms. Callintine is obviously

---

[1] Also named as "Dodson" in the body of the complaint.

>    targeting past and present member[s] of the Warden's Forum. Isn't there anything you can do to get this situation under control?

See docket #7-1, p. 6 of 10.

On May 24, 2015, several inmates were denied their meals after returning from visitation. Inmate Lowes complained to Plaintiff that Defendant Sabisch had denied him his meal. Plaintiff told Lowes to file a grievance, and indicated that if Lowes required assistance in filing, Plaintiff would help him. Plaintiff also stated that he would raise the issue during the Warden's Forum. At this point, Defendant Sabisch came over and stated that she had talked to Defendant Dotson, who told her that Aramark does not have to provide prisoners with a meal if they choose to go on a visit. Plaintiff stated that this issue had been previously discussed during the Warden's Forum and that a memorandum had been sent to officers indicating that Aramark was required to provide meals for prisoners who have requested one upon returning from a visit. Defendant Sabisch told Plaintiff to "take it up with the officer."

On May 25, 2015, Plaintiff spoke to Defendant Sabisch about prisoners being denied food trays following a visit. On May 26, 2015, Plaintiff learned that Defendant Sabisch had written a false misconduct ticket on him for creating a disturbance, which asserted that Plaintiff had six inmates surround her. Plaintiff states that this was a lie, as the only inmates present were himself and Lowes. On May 27, 2015, Defendant Sabisch told Plaintiff that Defendants Dotson, Johnson, and Bekett had forced her to write the misconduct because they wanted to get Plaintiff removed from the Warden's Forum.

Defendant Hill contacted Defendant Mastaw and informed him that Plaintiff had three pending misconducts and directed that Plaintiff be removed from the Warden's Forum.

Defendant Hill also unsuccessfully attempted to remove Plaintiff from recommended parole board programming.

On June 2, 2015, Assistant Resident Unit Supervisor Potts emailed Defendant Mastaw and asked why Plaintiff was being removed from the Warden's Forum when he had not been convicted of anything. Defendant Mastaw stated that it was being done due to a pending investigation. However, there was no investigation taking place until a day later, after Plaintiff requested one. Inspector Corrigan met with Defendants Sabisch and Bekett. On June 10, 2015, a hearing was held on the misconduct and the charge against Plaintiff was dismissed.

On June 11, 2015, Assistant Resident Unit Supervisor Potts sent an email to Defendant Mastaw to inform Plaintiff that the misconduct was being dismissed and he was reinstating Plaintiff to his jobs. Defendant Mastaw said "doesn't he have three pending charges and one recently reinstated"? Potts informed Defendant Mastaw that Plaintiff never had three charges, but only one that was reinstated and later dismissed because the allegations were found to be false. On the same date, Defendant Sabisch was removed from her prison job and Inmate Hurst was arrested for having sex with Defendant Sabisch. Plaintiff believes that Defendant Sabisch wrote the misconduct ticket in retaliation for his conduct in reporting the inappropriate relationship.

Plaintiff claims that Defendants' conduct violated his First, Eighth and Fourteenth Amendment rights. Plaintiff seeks damages and injunctive relief.

## II. <u>Failure to state a claim</u>

A complaint may be dismissed for failure to state a claim if it fails "'to give the defendant fair notice of what the . . . claim is and the grounds upon which it rests.'" *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (quoting *Conley v. Gibson*, 355 U.S. 41, 47 (1957)). While a complaint need not contain detailed factual allegations, a plaintiff's allegations must include more than labels and conclusions. *Twombly*, 550 U.S. at 555; *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) ("Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice."). The court must determine whether the complaint contains "enough facts to state a claim to relief that is plausible on its face." *Twombly*, 550 U.S. at 570. "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 679. Although the plausibility standard is not equivalent to a "'probability requirement,' . . . it asks for more than a sheer possibility that a defendant has acted unlawfully." *Iqbal*, 556 U.S. at 678 (quoting *Twombly*, 550 U.S. at 556). "[W]here the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged – but it has not 'show[n]' – that the pleader is entitled to relief." *Iqbal*, 556 U.S. at 679 (quoting FED. R. CIV. P. 8(a)(2)); *see also Hill v. Lappin*, 630 F.3d 468, 470-71 (6th Cir. 2010) (holding that the *Twombly/Iqbal* plausibility standard applies to dismissals of prisoner cases on initial review under 28 U.S.C. § 1915A(b)(1).

To state a claim under 42 U.S.C. § 1983, a plaintiff must allege the violation of a right secured by the federal Constitution or laws and must show that the deprivation was committed by a person acting under color of state law. *West v. Atkins*, 487 U.S. 42, 48 (1988); *Street v. Corr. Corp. of Am.*, 102 F.3d 810, 814 (6th Cir. 1996). Because § 1983 is a method for vindicating federal

rights, not a source of substantive rights itself, the first step in an action under § 1983 is to identify the specific constitutional right allegedly infringed. *Albright v. Oliver*, 510 U.S. 266, 271 (1994).

Initially, the court notes that Plaintiff may not maintain a § 1983 action against the Michigan Department of Corrections. Regardless of the form of relief requested, the states and their departments are immune under the Eleventh Amendment from suit in the federal courts, unless the state has waived immunity or Congress has expressly abrogated Eleventh Amendment immunity by statute. *See Pennhurst State Sch. & Hosp. v. Halderman*, 465 U.S. 89, 98-101 (1984); *Alabama v. Pugh*, 438 U.S. 781, 782 (1978); *O'Hara v. Wigginton*, 24 F.3d 823, 826 (6th Cir. 1993). Congress has not expressly abrogated Eleventh Amendment immunity by statute, *Quern v. Jordan*, 440 U.S. 332, 341 (1979), and the State of Michigan has not consented to civil rights suits in federal court. *Abick v. Michigan*, 803 F.2d 874, 877 (6th Cir. 1986). In numerous unpublished opinions, the Sixth Circuit has specifically held that the MDOC is absolutely immune from suit under the Eleventh Amendment. *See, e.g.*, *McCoy v. Michigan*, 369 F. App'x 646, 653-54 (6th Cir. 2010); *Turnboe v. Stegall*, No. 00-1182, 2000 WL1679478, at *2 (6th Cir. Nov. 1, 2000). In addition, the State of Michigan (acting through the Michigan Department of Corrections) is not a "person" who may be sued under § 1983 for money damages. *See Lapides v. Bd. of Regents*, 535 U.S. 613 (2002) (citing *Will v. Mich. Dep't of State Police*, 491 U.S. 58 (1989)). Therefore, the Court dismisses the Michigan Department of Corrections.

In addition, liability under Section 1983 must be based on more than merely the right to control employees. *Polk Co. v. Dodson*, 454 U.S. 312, 325-26 (1981); *Monell v. New York City Department of Social Services*, 436 U.S. 658 (1978). Thus, Section 1983 liability cannot be premised upon mere allegations of *respondeat superior*. *Monell*, 436 U.S. at 691; *Polk*, 454 U.S. at 325. A party cannot be held liable under Section 1983 absent a showing that the party personally

participated in, or otherwise authorized, approved or knowingly acquiesced in, the allegedly unconstitutional conduct. *See e.g. Leach v. Shelby Co. Sheriff*, 891 F.2d 1241, 1246 (6th Cir. 1989); *Hays v. Jefferson*, 668 F.2d 869, 874 (6th Cir. 1982). *See also Bellamy v. Bradley*, 729 F.2d 416, 421 (6th Cir. 1984).

Supervisory officials can be held liable for the acts of their subordinates only if plaintiff establishes that the supervisor failed to appropriately discharge his supervisory duties, and that this failure resulted in a denial or deprivation of plaintiff's federal rights. *See e.g. Leach*, 891 F.2d at 1246; *Hayes v. Vessey*, 777 F.2d 1149, 1154 (6th Cir. 1985). However, the failure of a supervisor to supervise, control or train the offending employee is not actionable absent a showing that the official implicitly encouraged, authorized, approved or knowingly acquiesced in, or in some other way directly participated in, the offensive conduct. *Leach*, 891 F.2d at 1246. Such a claim requires, at a minimum, that the official had knowledge of the offending employee's conduct at a time when the conduct could be prevented, or that such conduct was otherwise foreseeable or predictable. *See e.g. Gibson v. Foltz*, 963 F.2d 851, 854 (6th Cir. 1992). In addition, plaintiff must show that defendant had some duty or authority to act. *See e.g. Birrell v. Brown*, 867 F.2d 956, 959 (6th Cir. 1989) (lower level official not liable for shortcomings of building); *Ghandi v. Police Dep't of City of Detroit*, 747 F.2d 338, 351 (6th Cir. 1984) (mere presence at the scene is insufficient grounds to impose Section 1983 liability in the absence of a duty to act); *accord Hall v. Shipley*, 932 F.2d 1147 (6th Cir. 1991). In addition, merely bringing a problem to the attention of a supervisory official is not sufficient to impose such liability. *See Shelly v. Johnson*, 684 F. Supp. 941, 946 (W.D. Mich. 1987) (Hillman, C.J.), *aff'd* 849 F.2d 228 (6th Cir. 1988). Finally, supervisory liability claims cannot be based on simple negligence. *Leach*, 891 F.2d at 1246; *Weaver v. Toombs*, 756 F. Supp. 335, 337 (W.D. Mich. 1989), *aff'd* 915 F.2d 1574 (6th Cir. 1990).

Plaintiff has not alleged facts establishing that Defendants Heyns and Maclaren were personally involved in the activity which forms the basis of his claim. The only roles that Defendants Heyns and Maclaren had in this action involve the denial of administrative grievances or the failure to act. Defendants Heyns and Maclaren cannot be liable for such conduct under § 1983. *Shehee v. Luttrell*, 199 F.3d 295, 300 (6th Cir. 1999). Accordingly, the Court concludes that Plaintiff's claims against Defendants Heyns and Maclaren are properly dismissed for lack of personal involvement.

Plaintiff claims that Defendant Aramark and its employees, Bekett, Callintine, and Sabisch, regularly denied prisoners a meal if they chose to go on a visit, despite the fact that such prisoners were supposed to receive their meal upon their return from visitation. However, Plaintiff fails to allege that he was personally injured by this conduct.

> [W]hen a plaintiff's standing is brought into issue the relevant inquiry is whether, assuming justiciability of the claim, the plaintiff has shown an injury to himself that is likely to be redressed by a favorable decision. Absent such a showing, exercise of its power by a federal court would be gratuitous and thus inconsistent with the Art. III limitation.

*Simon v. Eastern Ky. Welfare Rights Org.*, 426 U.S. 26, 38 (1976). Therefore, because Plaintiff was not himself injured by this practice, he may not properly assert this claim.

Plaintiff claims that his due process rights were violated by the false misconduct ticket written by Defendant Sabisch at the behest of Defendants Johnson, Dotson, and Bekett, as well as by his removal from the Warden's Forum by Defendant Mastaw, who was following instructions given to him by Defendant Johnson. "The Fourteenth Amendment protects an individual from deprivation of life, liberty or property, without due process of law." *Bazetta v. McGinnis*, 430 F.3d 795, 801 (6th Cir. 2005). To establish a Fourteenth Amendment procedural due

process violation, a plaintiff must show that one of these interests is at stake. *Wilkinson v. Austin*, 545 U.S. 209, 221 (2005). Analysis of a procedural due process claim involves two steps: "[T]he first asks whether there exists a liberty or property interest which has been interfered with by the State; the second examines whether the procedures attendant upon that deprivation were constitutionally sufficient." *Ky. Dep't of Corr. v. Thompson*, 490 U.S. 454, 460 (1989). The Supreme Court long has held that the Due Process Clause does not protect every change in the conditions of confinement having an impact on a prisoner. *See Meachum v. Fano*, 427 U.S. 215, 225 (1976). In *Sandin v. Conner*, 515 U.S. 472, 484 (1995), the Court set forth the standard for determining when a state-created right creates a federally cognizable liberty interest protected by the Due Process Clause. According to the *Sandin* Court, a prisoner is entitled to the protections of due process only when the sanction "will inevitably affect the duration of his sentence" or when a deprivation imposes an "atypical and significant hardship on the inmate in relation to the ordinary incidents of prison life." *Sandin*, 515 U.S. at 486-87; *see also Jones v. Baker*, 155 F.3d 810, 812 (6th Cir. 1998); *Rimmer-Bey v. Brown*, 62 F.3d 789, 790-91 (6th Cir. 1995). The *Sandin* Court concluded that mere placement in administrative segregation did not implicate a liberty interest because the segregation at issue in that case did not impose an atypical and significant hardship. *Sandin*, 515 U.S. at 484; *Wilkinson v. Austin*, 545 U.S. 209, 222-23 (2005). Here, Plaintiff has failed to suggest that his removal from the Warden's Forum constituted an atypical and significant hardship.

Moreover, it is clear that Plaintiff received due process of law. In all cases where a person stands to be deprived of his life, liberty or property, he is entitled to due process of law. This due process of law gives the person the opportunity to convince an unbiased decision maker that, for example, he has been wrongly or falsely accused or that the evidence against him is false. The

Due Process Clause does not guarantee that the procedure will produce a correct decision. "It must be remembered that even if a state decision does deprive an individual of life, [liberty], or property, and even if that decision is erroneous, it does not necessarily follow that the decision violated that individual's right to due process." *Martinez v. California*, 444 U.S. 277, 284, n.9 (1980). "[T]he deprivation by state action of a constitutionally protected interest in 'life, liberty or property' is not in itself unconstitutional; what is unconstitutional is the deprivation of such an interest *without due process of law*." *Zinermon v. Burch*, 494 U.S. 113, 125 (1990) (emphasis in original). Further, an inmate has no right to counsel in disciplinary proceedings. *Wolff v. McDonnell*, 418 U.S. 539, 569-70 (1974); *Franklin v. Aycock*, 795 F.2d 1253, 1263 (6th Cir. 1986). Plaintiff states that he was found not guilty of the misconduct ticket and was reinstated to his prior position on the Warden's Forum. Therefore, his due process claims are properly dismissed.

Finally, Plaintiff claims that Defendants Sabisch, Bekett, Johnson, Dotson, and Hill issued a false misconduct ticket on him and removed him from his position on the Warden's Forum in retaliation for his conduct in raising complaints while on the Warden's Forum, and for complaining about an improper relationship between Defendant Sabisch and another inmate. The Court concludes that Plaintiff's retaliation claims against Defendants Sabisch, Bekett, Johnson, Dotson, and Hill are not clearly frivolous and may not be dismissed on initial review.

**Conclusion**

Having conducted the review required by the Prison Litigation Reform Act, the Court determines that Defendants Michigan Department of Corrections (MDOC), Heyns, Maclaren, Aramark Food Service, Callintine, and Mastaw will be dismissed for failure to state a claim pursuant to 28 U.S.C. § 1915A(b) and 42 U.S.C. § 1997e(c).  The Court will serve the complaint against Defendants Sabisch, Bekett, Johnson, Dotson, and Hill with regard to Plaintiff's retaliation claims.

An Order consistent with this Opinion will be entered.

Dated:  August 4, 2015 /s/ Gordon J. Quist
GORDON J. QUIST
UNITED STATES DISTRICT JUDGE